Submitted August 24, affirmed September 10, 1973

## ANDREW MILLER, *Appellant, v.* CUPP (No. 77837), *Respondent.*

513 P2d 1213

Robert J. Thorbeck, Salem, for appellant.

Lee Johnson, Attorney General, John W. Osburn, Solicitor General, and William R. Canessa, Assistant Attorney General, Salem, for respondent.

Before LANGTRY, Presiding Judge, and FOLEY and THORNTON, Judges.

LANGTRY, J.

Petitioner appeals from dismissal of his habeas corpus proceeding, contending that the court should have heard on the merits his complaints which formed the basis of the proceeding regardless of his failure to plead such cause as he had. In a previous case involving the same petitioner, State v. Miller, 1 Or App 460,

462, 460 P2d 874 (1969), Sup Ct *review denied* (1970), we noted:

> "* * * Defendant was a difficult person for an attorney or a court to deal with. He constantly demanded concessions to which he was not entitled * * *."

The record in the instant proceeding indicates that if there has been any change in petitioner since then it is that he has become more difficult. He is serving sentences in the Oregon State Penitentiary for a sodomy conviction (the appeal of which is the case noted above) and a conviction on a multiple-count indictment for burglary, concealing stolen property, larceny, and larceny from a building, all dating prior to 1970. An appeal of the latter case was dismissed while it was pending in the Oregon Supreme Court.

In the instant proceeding Mr. Miller filed a petition for a writ of habeas corpus and an alternative writ was issued. A proper return was made by the defendant, Superintendent of the Oregon State Penitentiary. The trial court then, after appointment for petitioner of an experienced attorney, attempted to get the petitioner to file a replication which would frame issues for a hearing. Petitioner appeared in the court several times during this process. He also personally prepared and filed numerous documents with the court. In the hearings and documents his complaints and the remedies that he sought constantly shifted so that it was virtually impossible for the court to understand what he was seeking.

From the time he filed his petition on September 11, 1972 until notice of appeal on February 13, 1973, petitioner filed 25 written documents, each demanding some kind of action by the court. Included

among these, all filed in the habeas corpus proceeding, were motions for transcript of a previous habeas corpus proceeding which he had commenced and which had been terminated, two denominated as mandamus proceedings against his attorney, and numerous complaints against the Superintendent of the penitentiary and several named guards and medical personnel therein. These complaints run through allegations of failure to accord him freedom of speech and opportunity for reformation, failure to supply him with medical aid and law books and materials to his satisfaction, failure to have access to voluminous boxes of legal papers he has accumulated, and accusations of intimidation and harassment by prison personnel. Besides specific complaints a thread runs through most of his statements in open court and some of the documents to the effect that he considers his convictions on the multiple-count indictment to be void on their face. The basis for this claim is the holding in *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971). If this is petitioner's chief complaint, a major difficulty presented to the trial court in isolating it was that the petitioner was complaining about many other things which were, if they could be proven, probably the subject of habeas corpus. The *Woolard* contention was not. ORS 138.540 provides that the Post-Conviction Relief Act shall be the exclusive means for challenging the lawfulness of a judgment.

In its efforts to get the matter at issue so a hearing could be held thereon, the trial court took cognizance of petitioner's continued protestations that he was subject to intimidation and harassment at the penitentiary by having him transferred to the Marion County jail for several weeks at a time on several occasions. This gave his court-appointed attorney an

opportunity in a different environment to confer with him at length. After several hearings and on October 13, 1972, the court said to Mr. Miller:

> "I'm either going to get a replication filed by you and have a hearing or I'm going to dismiss this petition and get it out of my court * * *."

On December 5, 1972 another hearing was held and the court again threatened to dismiss if the replication were not filed. The court then ordered another stay in the Marion County jail to afford an opportunity to prepare the replication. Finally, at a hearing on February 6, 1973 Mr. Miller's attorney stated he had prepared a proposed replication, a copy of which is in the record, which appears to have included the substance of the things Mr. Miller had said at various times that he wanted included in it. The attorney said that Mr. Miller told him he destroyed the original of the replication, refusing to sign it. In court, when faced with this, Mr. Miller seemed to shift his grounds of complaint, saying that the facts he wanted to state in the replication were not in the one his attorney had prepared, and that he needed more time to prepare what he wanted to say. He then accused his court-appointed attorney of conspiring against him. The trial court dismissed the proceeding and appointed new counsel to handle this appeal.

Our review of the record indicates that the court and Mr. Miller's court-appointed counsel have been more patient than perhaps they should have been with him. The court could not state petitioner's contentions for him. Therefore, faced with the apparent impossibility of getting issues framed, the court was justified in dismissing the proceeding.

Affirmed.